UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
NICHOLAS ANTHONY T.,

                        Plaintiff,          <u>DECISION AND ORDER</u>
                                            1:22-cv-10597-GRJ

        v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

      In May of 2020, Plaintiff Nicholas Anthony T.[1] applied for

Supplemental Security Income Benefits under the Social Security Act. The

Commissioner of Social Security denied the application.  Plaintiff,

represented by Dennis Kenny Law, Josephine Gottesman, Esq., of

counsel, commenced this action seeking judicial review of the

Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383

(c)(3).  The parties consented to the jurisdiction of a United States

Magistrate Judge. (Docket No. 9).

      This case was referred to the undersigned on August 16, 2023.

Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 11,

16). For the following reasons, Plaintiff's motion is due to be granted, the

Commissioner's motion is due to be denied, and this case is remanded for

further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on May 27, 2020, alleging disability

beginning March 20, 2019. (T at 10).[2]  Plaintiff's application was denied

initially and on reconsideration.  He requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on November 30,

2021, before ALJ Vincent Cascio. (T at 26-44). Plaintiff appeared with an

attorney and testified. (T at 33-40). The ALJ also received testimony from

Elizabeth Laflamme, a vocational expert. (T at 40-43).

### B.    ALJ's Decision

On December 9, 2021, the ALJ issued a decision denying the

application for benefits. (T at 7-25).  The ALJ found that Plaintiff had not

engaged in substantial gainful activity since May 27, 2020 (the application

date). (T at 12).  The ALJ concluded that Plaintiff's schizoaffective disorder,

depressive type; paranoid disorder; generalized anxiety disorder; and

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

autism were severe impairments as defined under the Social Security Act. (T at 12).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 13).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: he can understand, remember, and carry out simple, routine, repetitive work-related tasks, with only occasional contact with coworkers and supervisors and no tandem tasks; he can have no contact with the public; and he must work in a low stress job (defined as requiring only occasional decision-making and changes in the workplace). (T at 14-15).

The ALJ found that Plaintiff had no past relevant work. (T at 18). Considering Plaintiff's age (25 years old on the application date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 19).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits

for the period between May 27, 2020 (the application date) and December 9, 2021 (the date of the ALJ's decision). (T at 19-20).  On October 25, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on December 15, 2022. (Docket No. 1).  On March 15, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 11, 12).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on May 5, 2023. (Docket Nos. 16, 17).  On May 19, 2023, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 18).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she

lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one primary argument in support of his request for

reversal of the ALJ's decision.  Plaintiff argues that the ALJ's assessment

of the medical opinion evidence was flawed, which undermines the Listings

analysis, RFC determination, and step five findings.

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Hugh McKenzie, PNP completed a mental impairment questionnaire in October of 2021.  Mr. McKenzie, a psychiatric nurse practitioner, had been treating Plaintiff at least monthly since November of 2014.  (T at 634).  He opined that Plaintiff would be unable to meet competitive standards, or had no useful ability to function, with respect to his ability to: maintain attention for two-hour segments; maintain regular attendance; work in coordination with others; complete a normal workday and workweek; accept instructions and respond to criticism; get along with co-workers; respond appropriately to changes; and deal with normal work stress. (T at 636).

9

Mr. McKenzie assessed mild restriction in Plaintiff's activities of daily living, extreme difficulties in maintaining social functioning, and moderate difficulties with respect to sustaining concentration, persistence, and pace. (T at 638).  He opined that Plaintiff would be absent from work more than 4 days per month due to his impairments or treatment. (T at 639).

The ALJ found Mr. McKenzie's opinion unpersuasive. (T at 16-17). For the following reasons, the Court concludes that this determination must be revisited on remand.

The Second Circuit has recognized the particular value of treating source opinions when reviewing claims involving mental impairments.  *See Flynn v. Comm'r of SSA*, 729 F. App'x 119, 122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Mr. McKenzie had treated Plaintiff for nearly seven (7) years at the time he provided his assessment.  (T at 634).  Thus, he was the medical professional "most able to provide a detailed, longitudinal picture of [Plaintiff's] medical impairment(s)," with "a unique perspective to the medical evidence that cannot be obtained from the objective medical

findings alone or from reports of individual examinations." *Marinez v. Comm'r of Soc. Sec*., 269 F. Supp. 3d 207, 216 (S.D.N.Y. 2017) (citing 20 C.F.R. § 416.927(c)(2)).

The ALJ found Mr. McKenzie's opinion inconsistent with the treatment notes, which (the ALJ believed) "reflect[ed] largely normal mental status examinations" and "very little change in [Plaintiff's] functioning from visit to visit …." (T at 17).  The ALJ also found it significant that Plaintiff was reportedly able to maintain "good eye contact, logical and goal-directed thought process, and gross intact concentration and memory …" during medical appointments. (T at 17).

The fundamental problem with the ALJ's analysis is that the ALJ failed to appropriately address Mr. Kenzie's fundamental finding that Plaintiff has social phobias and paranoia that limit him from functioning outside of a very structured, well-supported personal environment and would preclude him from sustaining competitive remunerative work.

The treatment record contains significant support for this finding. Plaintiff was consistently described as functioning well at home (where he often stayed with the curtains closed) but experiencing paranoid thoughts and interpersonal conflicts when he left that setting (particularly when he went out alone). (T at 430, 432, 435, 440, 441, 444, 448, 458, 466, 471,

476, 478, 488, 493, 506, 512, 518, 522, 526, 531, 535, 547, 551, 567, 572, 590, 594, 598, 640, 645, 650, 655, 659, 664, 669).

The ALJ's characterization of the treatment record as "largely normal" and "unremarkable" ignores the consistent descriptions of a person living a sheltered life structured to avoid social situations that aggravated his phobia and paranoia. *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020)(cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that [claimant] could work full time even though the record as a whole suggested greater dysfunction.").

In addition, Plaintiff's ability to maintain appropriate affect during relatively brief, relatively infrequent (bi-weekly or monthly) encounters with supportive mental health professionals does not contradict Mr. McKenzie's conclusion that Plaintiff could not cope with the interpersonal demands of basic work activity.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not

necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn*, 729 Fed. Appx. at 121 (concluding that decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

Further, Plaintiff's comportment during mental health visits must be considered in context—Plaintiff's mother generally accompanied him to appointments and most of the visits during the period at issue were conducted via telehealth due to the COVID-19 pandemic.

Some support for the ALJ's decision is found in the psychiatric evaluation conducted in September of 2020 by Dr. Alison Murphy, a consultative examiner.  Dr. Murphy assessed moderate limitation in Plaintiff's ability to interact adequately with supervisors, co-workers, and the public; moderate impairment with respect to sustaining an ordinary routine and regular attendance; and moderate limitation in regulating emotions, controlling behaviors, and maintaining well-being. (T at 578-79).

The ALJ found Dr. Murphy's opinion persuasive. (T at 17).  The Second Circuit, however, has long cautioned that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)(citing *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).  "This concern is even more pronounced in the context of mental illness where … a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella*, 925 F.3d 90, 98 (2d Cir. 2019).

In addition, several aspects of Dr. Murphy's opinion are consistent with the findings of Mr. McKenzie.  Dr. Murphy noted that Plaintiff "experiences panic attacks whenever he has to leave the house, which is several times per month," characterized his prognosis as "guarded," and opined that Plaintiff's psychiatric problems "may significantly interfere with [his] ability to function on a daily basis." (T at 577, 579).

The ALJ also found the opinions of the non-examining State Agency review consultants persuasive. (T at 18).  Dr. Sherer and Dr. Ferrin assessed moderate impairment with respect to Plaintiff's ability to interact with others (T at 93, 112).  The ALJ considered these opinions consistent with "the unremarkable mental status examinations throughout [Plaintiff's] treatment." (T at 18).  As explained above, this Court finds that the ALJ's

characterization of the record as "unremarkable" cannot be sustained even under the deferential standard of review applicable here.

### B. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the ALJ's conclusion that Plaintiff retained the RFC to perform work that involved occasional interactions with supervisors and co-workers is not supported by substantial evidence. Remand is required for a proper consideration of the treating provider's opinion and appropriate assessment of Plaintiff's ability to meet the social demands of basic work activity sufficient to sustain competitive, remunerative employment.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 16) is DENIED; and this case is REMANDED for further proceedings consistent with this Decision and Order.

Dated: September 25, 2023          *s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge